NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12536
SJC-12540


WILLIAM SCIONE  vs.  COMMONWEALTH.
COMMONWEALTH  vs.  DAVID W. BARNES.



Suffolk.     September 7, 2018. - January 15, 2019.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, & Cypher, JJ.


Pretrial Detention.  Rape.  Destructive or Incendiary Device or
     Substance.  Constitutional Law, Preventive detention,
     Vagueness of statute.  Statute, Validity, Construction.




     Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on April 26, 2018.

     The case was heard by Kafker, J.

     Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on June 11, 2018.

     The case was reported by Gaziano, J.


     Steven Van Dyke, Committee for Public Counsel Services
(Patrick Levin, Committee for Public Counsel Services, also
present) for William Scione.
     Christopher B. Coughlin (Alexander C. Conley also present)
for David W. Barnes.
     Catherine Langevin Semel & Marina Moriarty, Assistant
District Attorneys, for the Commonwealth.

BUDD, J.  Here we are called upon to determine whether G. L. c. 276, § 58A (§ 58A), the pretrial detention statute, may be applied to David W. Barnes and William Scione, charged with violating G. L. c. 265, § 23A (§ 23A) (rape of child aggravated by age difference, i.e., statutory rape), and G. L. c. 266, § 102A (§ 102A) (use of incendiary device), respectively.  We conclude that § 23A does not qualify as a predicate offense under § 58A in its current form,[1] and that, depending upon the circumstances, § 102A may (and, in this case, does) so qualify.

1.  <u>Statutory scheme of § 58A</u>.  Section 58A, which provides for the pretrial detention of certain defendants, "seek[s] systematically to identify those who may present a danger to society and to incapacitate them before that danger may be realized" (citation omitted).  <u>Mendonza</u> v. <u>Commonwealth</u>, 423 Mass. 771, 780 (1996).  The Commonwealth may move for a dangerousness hearing pursuant to § 58A if a defendant has been charged with one or more predicate offenses as defined under the statute.  G. L. c. 276, § 58A (4).

---

[1] We note that on September 6, 2018, Governor Charles D. Baker sent the Legislature a proposed bill titled, "An Act to protect the Commonwealth from dangerous persons."  If enacted, this legislation would, among other things, amend G. L. c. 276, § 58A (§ 58A), to include G. L. c. 265, § 23A (§ 23A), as an enumerated offense.  See Letter from Governor Charles D. Baker to Senate and House of Representatives, at 6-7 (Sept. 6, 2018), https://www.mass.gov/files/documents/2018/09/06/Dangerous%20Pers ons%20Letter%20and%20Bill%20Text.pdf [https://perma.cc/6UG8-5B62].

If an individual has been charged with a predicate offense as defined by § 58A, a hearing may be held to determine whether the individual should be released either on personal recognizance, under particular conditions, or not at all.  G. L. c. 276, § 58A (2).  A judge may order pretrial detention if he or she finds that the Commonwealth has established by clear and convincing evidence that "no conditions of release will reasonably assure the safety of any other person or the community."  G. L. c. 276, § 58A (3).

Predicate offenses under § 58A either are specifically enumerated in the statute[2] or fall within one (or more) of the following categories:  (1) those felonies that "ha[ve] as an element of the offense the use, attempted use or threatened use of physical force against the person of another" (force clause); (2) "any other felony that, by its nature, involves a substantial risk that physical force against the person of another may result" (residual clause); or (3) "a misdemeanor or

---

[2] The enumerated offenses in § 58A (1) include the following:  "the crimes of burglary and arson whether or not a person has been placed at risk thereof, . . . a violation of an order pursuant to [G. L. c. 208, § 18, 34B, or 34C; G. L. c. 209, § 32; G. L. c. 209A, § 3, 4, or 5; or G. L. c. 209C, § 15 or 20], . . . arrested and charged with a violation of [G. L. c. 269, § 10 (a), (c), or (m); G. L. c. 266, § 112; or G. L. c. 272, §§ 77, 94], or arrested and charged with a violation of [G. L. c. 269, § 10G]."

felony involving abuse as defined in [G. L. c. 209A, § 1]"
(abuse clause).  G. L. c. 276, § 58A (1).

We are tasked with determining whether § 23A and § 102A,
neither of which is specifically enumerated in § 58A, fall
within one of the other specified categories of offenses
identified in the pretrial detention statute.

2.  Barnes and § 23A.  a.  Background.  We summarize the
facts alleged and procedural history provided in the record of
the proceedings against Barnes.  After reportedly communicating
through social media, the victim and Barnes met at a
predetermined location and then proceeded to a hotel, where they
engaged in sexual intercourse.  The victim later reported to
police that Barnes had sexually assaulted her.  At the time of
the incident, the victim was fifteen years old and Barnes was
forty-three years old.

Barnes was charged with, among other things,[3] statutory rape
in violation of § 23A, which provides in pertinent part:

> "Whoever unlawfully has sexual intercourse or
> unnatural sexual intercourse, and abuses a child under
> [sixteen] years of age and . . . (b) there exists more than
> a [ten-]year age difference between the defendant and the
> victim where the victim is between the ages of [twelve] and
> [sixteen] years of age . . . shall be punished . . . ."

---

[3] Barnes was also charged with violating G. L. c. 265, § 26D
(enticement of child for prostitution); G. L. c. 265, § 13L
(reckless endangerment of child); and G. L. c. 272, § 53A
(sexual conduct for fee).  These charges are not at issue in
this appeal.

At arraignment in the District Court, the Commonwealth moved to detain Barnes pursuant to § 58A. Following a dangerousness hearing, the Commonwealth's § 58A motion was allowed and Barnes was ordered held. Barnes appealed to the Superior Court, arguing that (1) § 23A does not qualify as a predicate offense under the force clause of § 58A; and (2) the residual clause of § 58A is unconstitutionally vague. A Superior Court judge agreed and reversed the District Court's judge's § 58A pretrial detention order. The Commonwealth filed a petition for extraordinary relief in the county court. G. L. c. 211, § 3. A single justice of this court reserved and reported the case for consideration by the full court.[4]

b. The force clause of § 58A. The force clause of § 58A is straightforward: an offense qualifies as a predicate crime pursuant to this clause if "an element of the offense is the

---

[4] After the Commonwealth filed its G. L. c. 211, § 3, petition, a grand jury indicted Barnes for violating § 23A, based on the same facts. Barnes was arraigned in the Superior Court, during which time the Commonwealth filed a new § 58A motion but requested that no action be taken at arraignment due to the instant appeal before this court; instead, bail was set with conditions. The Commonwealth moved to dismiss the charge in the District Court. That motion was allowed. Although the Commonwealth's c. 211, § 3, petition pertained to Barnes's District Court charge, which has since been dismissed, review by this court to determine whether a charge of violating § 23A qualifies as a predicate offense under § 58A remains appropriate, as Barnes is still subject to potential § 58A pretrial detainment in the Superior Court based on the same charge.

use, attempted use or threatened use of physical force against the person of another."  G. L. c. 276, § 58A (1).  In making this determination, we take a categorical approach, that is, look at the elements of the offense, rather than the facts of or circumstances surrounding the alleged conduct.  Commonwealth v. Young, 453 Mass. 707, 711-712 (2009).

The elements of the crime of statutory rape in violation of § 23A are that the defendant (1) had sexual intercourse or unnatural sexual intercourse with (2) a child between twelve and sixteen years of age, and (3) there is more than a ten-year gap between the ages of the defendant and the victim.  See G. L. c. 265, § 23A.  Compare Commonwealth v. Bernardo B., 453 Mass. 158, 172 (2009) (discussing elements of G. L. c. 265, § 23, "rape and abuse of child").  On its face, § 23A does not have as an element "the use, attempted use or threatened use of force." G. L. c. 276, § 58A (1).  See Bernardo B., supra ("Force is not a necessary element of the crime").  The Commonwealth contends that a charge of statutory rape nevertheless qualifies as a predicate offense under the force clause of § 58A because statutory rape contains an inherent element of force and the act of penetration on a child may substitute for the physical force requirement of the force clause.

To support its position, the Commonwealth points to cases in which the defendant is charged with forcible rape pursuant to

G. L. c. 265, § 22 (§ 22), and the (adult) complainant was unable to give or refuse consent due to being intoxicated or otherwise incapacitated. We have held that there, "the only force required for proof of the crime is 'such force as was necessary to accomplish' the act of intercourse -- that is, only the force necessary to effect penetration." Commonwealth v. Blache, 450 Mass. 583, 589 (2008), quoting Commonwealth v. Burke, 105 Mass. 376, 380 (1870). The Commonwealth reasons that because a child is legally incapable of consenting to sexual intercourse, see Commonwealth v. Wilbur W., 479 Mass. 397, 398-399 (2018), the act of penetration of a child satisfies the element of physical force required by § 58A. This argument is flawed.

Unlike § 23A, § 22 includes as an element the use or threatened use of force.[5] The fact that the element of force in § 22 may be satisfied in some cases by the act of penetration has nothing at all to do with whether § 23A includes the use of force as an element of the crime. The fact that a child is incapable of consenting to sexual intercourse is relevant not to whether there is an element of force in statutory rape, but

---

[5] General Laws c. 265, § 22 (§ 22), states in pertinent part: "Whoever has sexual intercourse or unnatural sexual intercourse with a person, and compels such person to submit by force and against his will, or compels such person to submit by threat of bodily injury . . . shall be punished . . . ."

instead to whether consent is a defense to the crime (it is not).

Importantly, the crime of forcible rape of a child, G. L. c. 265, § 22A, which punishes "[w]hoever has sexual intercourse or unnatural sexual intercourse with a child under [sixteen], and compels such child to submit by force and against his will or compels such child to submit by threat of bodily injury," does qualify as a predicate offense under the force clause of § 58A (emphasis added). The fact that the Legislature saw fit to create two separate statutory rape offenses -- one that includes the use of force and one that does not -- further supports our conclusion that § 23A does not contain as an element the use of force.

Because "the use, attempted use or threatened use of physical force" is not an element of § 23A, the statute does not qualify as a predicate offense under the force clause of § 58A.

c. The residual clause of § 58A. The Commonwealth also maintains that § 23A is a predicate offense under the residual clause of § 58A, and that the motion judge erred in concluding that the clause is unconstitutionally vague. We agree with the motion judge.

A statute is unconstitutionally vague when "it lacks . . . certainty and definiteness . . . so that a [person] of ordinary intelligence [is unable] to ascertain whether any act

or omission of his [or hers], as the case may be, will come within the sweep of the statute." Commonwealth v. Slome, 321 Mass. 713, 715 (1947). See Commonwealth v. Reyes, 464 Mass. 245, 249 (2013). See also Sessions v. Dimaya, 138 S. Ct. 1204, 1212 (2018) (opinion of Kagan, J.) (Dimaya). However, "[t]he degree of vagueness that is permissible under principles of due process varies with the interests involved."[6] Chief of Police of Worcester v. Holden, 470 Mass. 845, 854 (2015) (citation omitted). See Dimaya, supra at 1212 (opinion of Kagan, J.).

The United States Supreme Court declared a similar residual clause, found in 18 U.S.C. § 924(e)(2)(B)(ii) (2012), known as the Armed Career Criminal Act (ACCA), to be unconstitutionally vague. Johnson v. United States, 135 S. Ct. 2551, 2556 (2015). The ACCA, which more severely punishes those defendants with three or more previous violent felony convictions, defines "violent felony" to include "any crime punishable by imprisonment for a term exceeding one year . . . that . . . involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). The Court held that the clause violated due process because it left

---

[6] Thus, for example, "the regulation of business and economic activity is subject to a vagueness test less strict than that applied to most criminal behavior." Brookline v. Commissioner of the Dep't of Envtl. Quality Eng'g, 387 Mass. 372, 378 (1982), S.C., 398 Mass. 404 (1986).

open the question how to estimate the risk of physical injury posed by a crime, as well as how much risk was required for a crime to qualify as a violent felony.  Johnson, supra at 2557-2558.  We soon followed suit with respect to the Massachusetts version of the ACCA, G. L. c. 140, § 121, as incorporated in G. L. c. 269, § 10G, which included an almost identical residual clause.[7]  Commonwealth v. Beal, 474 Mass. 341, 350-351 (2016).

More recently, the Supreme Court reviewed the Federal statute defining "crime of violence" (18 U.S.C. § 16) and struck down its residual clause, which is almost identical to that of § 58A.  See Dimaya, 138 S. Ct. at 1211.  Compare 18 U.S.C. § 16(b) with G. L. c. 276, § 58A (1).  The residual clause of 18 U.S.C. § 16 defines a crime of violence to include any felony "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."[8]  18 U.S.C. § 16(b).

_____

[7] The residual clause of G. L. c. 269, § 10G, provides that a "violent crime" includes "any crime punishable by imprisonment for a term exceeding one year . . . that . . . involves conduct that presents a serious risk of physical injury to another." G. L. c. 140, § 121, as incorporated in G. L. c. 269, § 10G.

[8] The only difference between the residual clause of 18 U.S.C. § 16(b) and that of § 58A (1) is that, unlike the latter, the former includes in its definition "physical force against the person or property of another" (emphasis added).

In Dimaya, the defendant, who was found to be deportable pursuant to the Immigration and Nationality Act after being convicted of a crime of violence as defined by 18 U.S.C. § 16(b),[9] challenged that clause as being unconstitutionally vague. The Court concluded that because "deportation is 'a particularly severe penalty,'" "the most exacting vagueness standard should apply." Dimaya, supra at 1213 (opinion of Kagan, J.). Following the reasoning in Johnson, the Court concluded that, like the residual clause of the ACCA, § 16(b) violates due process "[b]y combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a [crime of violence]." Dimaya, supra at 1214, quoting Johnson, 135 S. Ct. at 2558.

We note that the United States Supreme Court has not opined on the constitutionality of the residual clause found in the

---

[9] The Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii), requires the deportation of any alien convicted of an "aggravated felony," which includes under the statute a crime of violence as defined by 18 U.S.C. § 16.

Federal pretrial detention statute.[10,11]  However, we focus here on art. 12 of the Massachusetts Declaration of Rights with regard to § 58A.  See, e.g., Commonwealth v. Augustine, 467 Mass. 230, 243-244 (2014).  In doing so we note that although pretrial detention is "regulatory in character," Brangan v. Commonwealth, 477 Mass. 691, 702 n.16 (2017), "[t]he right to be free from confinement prior to trial is a protected liberty interest," (citations omitted).[12]  Commonwealth v. Torres, 441 Mass. 499, 502 n.4 (2004).  We have held other statutes that fail to give notice of conduct to be avoided and provide unfettered discretion to police or the courts to be unconstitutionally vague under due process principles where the defendant's liberty interest is at stake.  See Alegata v. Commonwealth, 353 Mass. 287, 294-301 (1967) (striking down G. L.

---

[10] The federal pretrial detention statute, 18 U.S.C. § 3142(f)(1)(A), subjects defendants to a pretrial detention hearing when his or her case involves "a crime of violence."  A "crime of violence" is defined in 18 U.S.C. § 3156(a)(4)(B) as "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

[11] At least one Federal District Court has addressed the issue, however.  The United States District Court for the Western District of New York concluded that the Federal pretrial detention statute is not unconstitutionally vague.  See United States vs. Watkins, U.S. Dist. Ct., No. 18-CR-131 (W.D.N.Y. Oct. 9, 2018).

[12] The length of a pretrial detention period may, in some cases, last years.  See e.g., Brangan, 477 Mass. at 693.

c. 272, § 66, in part, G. L. c. 272, § 63, in part, and G. L. c. 272, § 68, in part, as facially void under due process clause); Revere v. Aucella, 369 Mass. 138, 142-143 (1975), appeal dismissed sub nom. Charger Invs., Inc. v. Corbett, 429 U.S. 877 (1976) (holding G. L. c. 272, § 16, unconstitutionally vague and overbroad for purpose of imposing criminal liability); Commonwealth v. Kwiatkowski, 418 Mass. 543, 546-547 (1994) (holding G. L. c. 265, § 43 [d], unconstitutionally vague under due process principles); Commonwealth v. Pagan, 445 Mass. 161, 170-173 (2005) (striking down G. L. c. 275, § 18, in part, as unconstitutionally vague).[13]

Given the Supreme Court's holdings in Johnson and Dimaya, coupled with our vagueness jurisprudence, we conclude that the language in the residual clause of § 58A is unconstitutionally vague under art. 12, and therefore § 23A cannot qualify as a predicate offense pursuant to it.[14]

---

[13] To the extent that any of these cases refer to the Fourteenth Amendment to the United States Constitution when concluding that the statute at issue violates due process, the statute also violates due process principles in art. 12 of the Massachusetts Declaration of Rights.

[14] Analogizing to Beckles v. United States, 137 S. Ct. 886 (2017), the Commonwealth contends that § 58A should not be subject to a rigorous vagueness analysis because the statute only triggers the Commonwealth's right to move for a dangerousness hearing and does not define a criminal offense or "fix" a permissible sentence. See id. at 892. This argument is misplaced.

3. <u>Scione and § 102A</u>. a. <u>Background</u>. We summarize the alleged facts gleaned from the investigative reports, as well as the procedural history provided in the record of the proceedings against Scione, reserving certain details for later discussion. Police responded to a 911 call reporting a fire in the driveway of the victim's residence. Upon extinguishing the fire, officers observed the melted remains of a plastic gasoline container. A police detective described the origin of the fire as a "homemade" improvised explosive device (I.E.D.), which, had it exploded, could have caused "serious harm."

Scione was charged with violating § 102A, which provides in pertinent part:

> "Whoever, without lawful authority, . . . places an explosive or a destructive or incendiary device or substance with the intent: (i) to cause fear, panic or

---

In <u>Beckles</u>, the Supreme Court held that the Federal sentencing guidelines could not be challenged for vagueness because they are merely advisory and thus did not create any arbitrary mechanisms of enforcement. See <u>id</u>. Section 58A (1) automatically authorizes the Commonwealth to move for a dangerousness hearing if the charged offense fits within any of the categories of the provision, including the residual clause. As a defendant who is subject to § 58A hearing faces the possibility of pretrial detention, his or her liberty is plainly at stake. See <u>Foucha</u> v. <u>Louisiana</u>, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action"); <u>Josh J</u>. v. <u>Commonwealth</u>, 478 Mass. 716, 720-721 (2018); <u>Paquette</u> v. <u>Commonwealth</u>, 440 Mass. 121, 124, 131 (2003), cert. denied, 540 U.S. 1150 (2004). See generally <u>United States</u> v. <u>Salerno</u>, 481 U.S. 739 (1987) (facial challenge to Bail Reform Act, which subjects defendants to pretrial detention, must pass scrutiny under due process clause).

apprehension in any person; or (ii) to ignite, explode or discharge such explosive or such destructive or incendiary device or substance . . . shall be punished . . . ."

At Scione's arraignment in the District Court, the Commonwealth moved to detain him pursuant to § 58A. Following the dangerousness hearing, the judge allowed the Commonwealth's motion. Scione appealed from the ruling to the Superior Court, challenging (for the first time) the Commonwealth's ability to seek detention under § 58A with an alleged violation of § 102A as the predicate offense. A Superior Court judge denied Scione's appeal, concluding that the charge against him was a lawful predicate under the abuse clause. Subsequently, Scione filed a petition for extraordinary relief in the county court. See G. L. c. 211, § 3. A single justice of this court denied the petition without a hearing, and Scione appealed. The case is now properly before us pursuant to S.J.C. Rule 2:21, as amended, 434 Mass. 1301 (2001).[15]

---

[15] Similar to Barnes's case, after Scione filed his c. 211, § 3, petition, a grand jury indicted him for violating § 102A based on the same facts, and the Commonwealth moved to dismiss the case in the District Court. The Commonwealth filed a new § 58A motion in the Superior Court, where a judge found that abuse was alleged in connection with the charge, and ordered Scione held. Thus, as with Barnes's case, although the c. 211, § 3, petition pertained to the now-dismissed District Court charge, review by this court to determine whether the charge of violating § 102A qualifies as a predicate offense under § 58A remains appropriate.

b.  The abuse clause of § 58A.  Scione argues that the lower court judge erred in concluding that a charge under § 102A qualifies as a predicate offense under the abuse clause, that is, that § 102A is not a "misdemeanor or felony involving abuse."  G. L. c. 276, § 58A (1).  In particular, he contends that the language and structure of the abuse clause requires a categorical approach, i.e., an inquiry focused only on the statutory elements of the charged offense, rather than the facts underlying the complaint or indictment.  See Commonwealth v. Young, 453 Mass. 707, 712 (2009).  Scione maintains that because § 102A does not have abuse as an element of the offense, it cannot be a predicate offense that triggers § 58A.  In contrast, the Commonwealth argues that the plain language of the abuse clause of § 58A captures all offenses "involving abuse" as defined in G. L. c. 209A, § 1 (c. 209A, § 1), regardless of whether the abuse involved is a statutorily prescribed element of the offense charged.  For the reasons that follow, we agree with the Commonwealth.

Whether the abuse clause of § 58A requires a categorical approach depends on what the Legislature meant by the phrase "a misdemeanor or felony involving abuse."  See Pyle v. School Comm. of S. Hadley, 423 Mass. 283, 285 (1996) ("Our primary duty is to interpret a statute in accordance with the intent of the Legislature").

As discussed in more detail supra, § 58A specifically states that "abuse" is defined there just as the term is defined in c. 209A, § 1.  This does not provide any insight whether a categorical approach to the abuse clause is necessary.  The word "involving" is not defined in the statute.  "When a statute does not define its words we give them their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose. . . .  We derive the words' usual and accepted meaning from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions."  Commonwealth v. Campbell, 415 Mass. 697, 700 (1993), quoting Commonwealth v. Zone Book, Inc., 372 Mass. 366, 369 (1977).  Webster's Third New International Dictionary 1191 (1993) defines the term "involve" as "to relate closely[,] . . . contain, include[,] . . . to require as a necessary accompaniment[,] . . . to have an effect on[,] concern directly."  The term appears to connote both nonexhaustive inclusion with the use of the word "include," and selective exclusivity with the use of the phrase "to require as a necessary accompaniment," depending upon the classification at issue.

Thus, it is unclear whether "involving" in the abuse clause means "limited to," or "including but not limited to."  The former meaning would indicate a categorical approach, looking

only at the elements of the crime to determine whether a particular offense is one "involving abuse"; the latter meaning would instead require a review of the circumstances surrounding the alleged crime. As we cannot discern the meaning of the clause based on its plain language, we turn to other "well-established principles of statutory construction [to] guide our interpretation." Federal Nat'l Mtge. Ass'n v. Rego, 474 Mass. 329, 334 (2016).

We begin by comparing the abuse clause to the force clause, also in § 58A (1). See Ginther v. Commissioner of Ins., 427 Mass. 319, 324 (1998) (comparing use of language employed within same statute is well-established rule of statutory construction). The force clause permits the Commonwealth to move for the pretrial detention of a defendant charged with "a felony offense that has as an element of the offense the use, attempted use or threatened use of physical force against the person of another" (emphasis added). G. L. c. 276, § 58A (1). Notably, there the Legislature specifically refers to those crimes which have "as an element of the offense" the use of force, but did not do so in the abuse clause. See Commonwealth v. Gagnon, 439 Mass. 826, 833 (2003) ("[w]here the [L]egislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded" [citation

omitted]).  See also Commonwealth v. Caracciola, 409 Mass. 648, 653 n.8 (1991).

Additionally, we note that there is a fundamental difference between the concepts of "the use of force" and "abuse."  The use of force can be, and is, an element of particular crimes.  See, e.g., G. L. c. 265, § 22A (rape of child); G. L. c. 265, § 22 (rape); G. L. c. 265, § 18C (home invasion); G. L. c. 265, § 19 (unarmed robbery); G. L. c. 265, § 51 (human trafficking -- "forced services").

In contrast, as used in § 58A, abuse is not an element of a crime.  "Abuse" is defined in c. 209A, § 1, as

> "the occurrence of one or more of the following acts between family or household members:  (a) attempting to cause or causing physical harm; (b) placing another in fear of imminent serious physical harm; (c) causing another to engage involuntarily in sexual relations by force, threat or duress."

Thus, "abuse" as it is used in § 58A is best described as a characterization of an action or actions, and is itself comprised of elements.  We are unaware of any crimes that have as an element "abuse" as defined in c. 209A, § 1.

As the Commonwealth points out, only assault or assault and battery on a household member, in violation of G. L. c. 265, § 13M, likely would satisfy the abuse clause under a categorical approach.  The drafters clearly knew how to list specific crimes to be considered as predicate offenses under § 58A, because they

did so.  See G. L. c. 276, § 58A (1).  Had the Legislature

intended that only one crime be captured under the abuse clause,

there would be no need for the clause at all; instead, the

drafters would have included § 13M as one of the specifically

enumerated offenses in the section.[16]  See DiFiore v. American

Airlines, Inc., 454 Mass. 486, 490-491 (2009) ("our respect for

the Legislature's considered judgment dictates that we interpret

the statute to be sensible, rejecting unreasonable

interpretations unless the clear meaning of the language

requires such an interpretation").

Finally, applying a noncategorical approach to the abuse

clause is well supported by the legislative history of § 58A.

See Casseus v. Eastern Bus Co., 478 Mass. 786, 797 (2018),

quoting Commonwealth v. Mogelinski, 466 Mass. 627, 633 (2013)

("A statute's meaning 'must be reasonable and supported by the

---

[16] Scione's reliance upon Commonwealth v. Young, 453 Mass. 707 (2009), to support the argument that the abuse clause requires a categorical approach to determine whether a felony is a predicate offense under § 58A is unavailing.  In that case, where we held that unlawful possession of a firearm is not a predicate offense under § 58A, we concluded that "§ 58A requires a categorical approach to determining whether a felony is a predicate offense, independent of the particular facts giving rise to a complaint or indictment." Id. at 712, 716.  However, this conclusion referred to the force and residual clauses of § 58A, not its abuse clause. Id. at 711-712.  Parenthetically, we note that the Legislature has since amended § 58A to include unlawful possession of a firearm as an enumerated offense.  See G. L. c. 276, § 58A (1).

. . . history of the statute'"). In 1994, after the previous version of the pretrial detention statute had been held unconstitutional,[17] the newly proposed bill was presented to the Legislature accompanied by a letter from then Governor William F. Weld explaining its purpose. The Governor wrote in part:

> "Government has no more important obligation than protecting the safety of its citizens, and yet dangerous arrestees who clearly pose an ongoing danger to our community too often are released out on bail or personal recognizance. Innocent lives, particularly the lives of women victimized by domestic violence continue to be at risk. This legislation is critical to our ability to reduce, if not eliminate, that risk."

1994 House Doc. No. 4305. In addition, when the Senate was considering the proposed legislation, at least one senator raised the issue of combatting domestic violence.[18] Thus, interpreting the abuse clause so as to allow for the examination of the underlying facts giving rise to the charge in question, rather than in a strictly categorical way, is in keeping with the Legislature's intent.

---

[17] We concluded that certain provisions of G. L. c. 276, § 58, as amended through St. 1992, c. 201, §§ 3-4, the predecessor to § 58A, had insufficient procedural protections. See Aime v. Commonwealth, 414 Mass. 667, 682 (1993).

[18] In highlighting the importance of the bill, then Senator Cheryl Jacques stated during a Senate session on June 30, 1994: "One of the biggest fights on [the Senate's] hands is curbing domestic abuse." State House News Service (Senate Sess.), June 30, 1994, at 1 (considering bail reform and "release on bail of certain persons" in 1994 House Doc. No. 4305).

For the foregoing reasons, we conclude that a judge may look beyond the elements of a crime to the surrounding circumstances of the alleged offense to determine whether it is "misdemeanor or felony involving abuse," and thus a predicate offense under § 58A.[19]

c. <u>Application of the abuse clause to the circumstances of the alleged violation of § 102A</u>. Scione argues that, even taking a noncategorical approach, the circumstances surrounding his alleged violation of § 102A do not qualify under the abuse clause of § 58A, that is, the alleged facts did not involve abuse as defined by c. 209A, § 1. More specifically, he argues that the record does not support a finding that he is a "family or household member[]," that he "attempt[ed] to cause . . . physical harm" to the victim or that he "plac[ed anyone] in fear of imminent serious physical harm." See G. L. c. 209A, § 1. Reviewing the single justice's order pursuant to G. L. c. 211, § 3, for an abuse of discretion or clear error of law, see <u>Department of Mental Retardation</u> v. <u>Kendrew</u>, 418 Mass. 50, 53 (1994), we find neither.

_____

[19] Scione also argues that § 102A does not qualify as a predicate for pretrial detention under the residual clause of § 58A and that the clause is unconstitutionally vague. Based on our conclusion that § 102A is a predicate offense in these circumstances pursuant to the abuse clause of § 58A (and because we conclude in part 2.c, <u>supra</u>, that the residual clause is unconstitutional), we need not reach these arguments.

Pursuant to c. 209A, § 1, a "family or household member[]" is defined in pertinent part as

> "persons who . . . are or <u>have been</u> in a substantive dating or engagement relationship, which shall be adjudged by . . . consideration of the following factors: (1) the length of time of the relationship; (2) the type of relationship; (3) the frequency of interaction between the parties; and (4) if the relationship has been terminated by either person, the length of time elapsed since the termination of the relationship" (emphasis added).

Here, according to the record, Scione and the victim had dated for approximately four years before the victim ended the relationship in 2012, six years prior to the instant incident. Although the victim had not had physical or verbal contact with Scione for a few years after the relationship ended, over the past six years, members of the victim's family had seen Scione on numerous occasions walking past their home. Approximately three years ago, he was seen looking into the windows of the home, and during the week preceding the incident, he was observed throwing candy at the house, specifically at the window that used to be that of the victim's bedroom when she and Scione were dating. These facts certainly satisfy the definition of a family or household member as defined by c. 209A, § 1. See, e.g., <u>Brossard</u> v. <u>West Roxbury Div. of the Dist. Court Dep't</u>, 417 Mass. 183, 185 (1994) ("emotional relationship which entailed substantially more than a few casual dates" amounted to "substantive dating relationship").

The record also supports a finding that Scione attempted to cause physical harm or placed the victim in fear of imminent serious physical harm as he placed a homemade I.E.D. at the bottom of the victim's driveway, which, had it exploded, could have caused serious harm.  Thus, based on the circumstances in this case, the alleged violation of § 102A qualifies as a predicate offense under the abuse clause of § 58A.  We therefore affirm the order of the single justice denying Scione's petition for extraordinary relief.

4.  <u>Conclusion</u>.  The Superior Court judge's order vacating the District Court judge's § 58A pretrial detention order of Barnes is affirmed.  The denial of Scione's petition for extraordinary relief is affirmed.

<u>So ordered</u>.

LOWY, J. (concurring).  I agree with the court that, in the circumstances of this case, use of an incendiary device in violation of G. L. c. 266, § 102A, qualifies as a predicate offense under the pretrial detention statute, G. L. c. 276, § 58A (§ 58A).  I also agree that rape aggravated by age difference, G. L. c. 265, § 23A (§ 23A), does not qualify as a predicate offense under § 58A.  I write separately because such a counterintuitive result requires further discussion and consideration by the Legislature.

As discussed in the court's opinion, the pretrial detention statute does not list rape aggravated by age difference as a qualifying offense.  Given today's result, the Legislature may choose to consider this omission with alacrity.[20]  There is an apparent explanation for why aggravated rape is not enumerated as a qualifying offense -- it presumably falls within the residual clause of § 58A.  Our decision today makes clear, however, that the residual clause is unconstitutionally vague.  Finally, the force clause of § 58A applies only when an element of the offense is "the use, attempted use or threatened use of physical force against the person of another."  G. L. c. 276, § 58A (1).  Aggravated rape, as it applies to this indictment, means that there was intercourse between individuals more than

_____

[20] Indeed, there is pending legislation to this effect.  See 2018 House Doc. No. 4903.

ten years apart in age.  Indeed, the point of criminalizing this serious and disturbing conduct is that such conduct is deeply offensive, regardless of whether force is used.  The Commonwealth's argument that § 23A falls within the force clause is to ignore the egregiousness of a violation of § 23A even when no force is involved.

Although our conclusion with respect to aggravated rape is unfortunate, it is correct under the law as currently written.  Therefore, I concur in the judgments.